UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> vs.<br><br>DAVID WARD ASTIN,<br><br>    Defendant. | CR. 16-50061-JLV<br><br>ORDER |

**INTRODUCTION**

On May 24, 2016, a grand jury indicted defendant David Ward Astin on 21 counts of wire fraud. (Docket 1). Defendant allegedly defrauded approximately half a million dollars from his victim through a scheme centering on foreign currency trading. Id. At the time of his indictment, defendant was in Guatemala, where he had been living since mid-2014. (Docket 14 at pp. 2-3). He was arrested in Houston, Texas, upon returning to the United States on October 22, 2018. Id. at p. 3. On November 26, 2018, defendant made his initial appearance before Magistrate Judge Daneta Wollmann. (Docket 12). The magistrate judge also held a detention hearing at that appearance. Id. She found defendant was a flight risk and ordered him detained pending trial. (Docket 13).

Defendant moved the magistrate judge to reconsider her detention order. (Docket 14). The magistrate judge denied defendant's motion in a text order. (Docket 16). He now appeals the magistrate judge's order denying his motion

for reconsideration, arguing the conditions suggested by United States Probation Office Pretrial Services are sufficient to ensure his appearance at future proceedings. (Docket 19). The government opposes defendant's appeal. (Docket 22). The transcript of the detention hearing, see Docket 17, and the parties' briefing is sufficient for the court to resolve defendant's appeal; the court will not hold a further hearing on the matter. For the reasons given below, the court grants defendant's appeal, vacates the magistrate judge's order, and orders defendant released pending trial, subject to conditions of release.

**ANALYSIS**

**I. Legal Standards**

"A defendant may be detained before trial '[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions . . . will reasonably assure the defendant's appearance . . . .'" United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (emphasis omitted) (quoting United States v. Kisling, 334 F.3d 734, 735 (8th Cir. 2003)).

> In determining if release conditions exist that will reasonably assure the appearance of a defendant at trial and the safety of the community, the court considers the following: (1) the nature and circumstances of the crime; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including mental condition, family ties, employment, community ties, and past conduct; and (4) the seriousness of the danger to the community or to an individual.

Id. (citing 18 U.S.C. § 3142(g)).

2

"If a person is ordered detained by a magistrate judge . . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly."[1] 18 U.S.C. § 3145(b). "When the district court acts on a motion to revoke or amend a magistrate's pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." United States v. Rueben, 974 F.2d 580, 585 (5th Cir. 1992).

II.  **Discussion**

The parties have primarily contested whether there are any conditions which would assure defendant's appearance in court, given his ties to Guatemala. Resolving this question requires the court to first determine whether defendant is likely not to appear and then to determine whether any conditions exist which would assure his appearance. The parties presented little or no evidence regarding "the weight of the evidence against the [defendant]" or "the seriousness of the danger" he may pose to "the community" or to an individual in either the detention hearing before the magistrate judge or in their

---

[1] The court notes defendant is appealing the magistrate judge's denial of his motion for reconsideration of her detention order. (Docket 19). However, defendant does not seek to reopen the detention hearing; he asks the court to release him. Id. at pp. 4-5. The court will construe his filing as an appeal of the magistrate judge's detention order.

briefing here.² 18 U.S.C. §§ 3142(g)(2), (4). The court concludes these two factors do not weigh in favor of detaining defendant and will instead turn to the other two factors it must consider: the nature of the charged offense and defendant's history and characteristics. Id. at §§ 3142(g)(1), (3). The court finds these factors establish defendant is a flight risk but do not establish, by a preponderance of the evidence, that there is no set of conditions which will assure defendant's appearance in future proceedings. Abad, 350 F.3d at 797.

### A. Nature of the charged offense

Defendant is charged with 21 counts of wire fraud in violation of 18 U.S.C. § 1343. The maximum penalty for each count is 20 years of incarceration. 18 U.S.C. § 1343. The magistrate judge correctly noted defendant's total exposure to imprisonment exceeded 400 years. (Docket 17 at p. 37). She weighed the seriousness of the charges against defendant in favor of detention. Id.

The court agrees the pending charges are serious. If proven true, defendant defrauded his victim of half a million dollars—not an inconsiderate sum of money, particularly in western South Dakota. However, the charges are neither violent nor related to international travel. The court gleans no implication from the pending charges that defendant will abscond, as it would

---

²During the detention hearing, the government cursorily argued defendant presents a "financial risk" to the community, based on the nature of his pending charges. (Docket 17 at pp. 30-31). The government does not raise this argument in its briefing on the pending appeal. The court, like the parties, will focus on the flight risk question.

4

were the charges related to international travel or if the government had produced evidence of prior refusal to attend court hearings. The court thus finds "the nature and circumstances of the offense charged" do not weigh in favor of pretrial detention. 18 U.S.C. § 3142(g)(1).

    **B.**    **Defendant's history and characteristics**

The parties primarily focus on this inquiry in their briefing. As relevant here, the court is to consider "the history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" Id. at § 3142(g)(3)(A). The government contends defendant's strong ties to Guatemala, his arguably questionable immigration status in that country, and his alleged "scouting" of his criminal status in the United States before his return establish he is likely to abscond. (Docket 22 at pp. 4-7). Defendant argues his actions to maintain his Guatemalan visa were entirely above-board, that he needed a criminal background check for his Guatemalan permanent residency application, and, perhaps alternatively, that any investigations into his criminal status were undertaken by his father not at his direction. (Docket 14 at pp. 4-10). Defendant further argues any concern regarding his appearance in future proceedings can be mitigated through conditions of pretrial release. (Docket 19 at pp. 4-5).

5

Defendant is married to a Guatemalan citizen and has eight children with her.  (Docket 9 at p. 2).   He moved to Guatemala in "mid-2014, following what he felt was [sic] years of harassment by the IRS and State Officials[.]"   (Docket 14 at p. 4).   Upon arrival in Guatemala, defendant obtained a "90-day Residence Permit" which he renewed by traveling to Mexico and reentering Guatemala.   Id. at p. 5.   The parties dispute whether defendant's periodic travel "violated the spirit," if not the letter, of Guatemalan immigration law, as testified to by Federal Bureau of Investigation Special Agent Michael McRoden at the detention hearing.  (Docket 17 at pp. 17-18).   Regardless, defendant applied for permanent residency in Guatemala on June 13, 2018.   (Docket 14 at p. 7).   He explains the four-year gap between his move to Guatemala and his application for permanent residency—four years during which he was evidently traveling back and forth to Mexico every three months—as necessitated by the cost of the permanent residency applications for him and his six American citizen children.[3]   Id. at p. 7 n.7.   At the detention hearing, defense counsel implied defendant's family remained in Guatemala; the government more recently stated defendant's wife and three of his children are currently residing in Guatemala.   (Dockets 17 at p. 34 & 22 at p. 3).

---

[3]The pretrial report completed by the United States Probation Office in Houston, where defendant was arrested upon his arrival in the United States, states three of defendant's eight children hold Guatemalan citizenship in addition to American citizenship, leaving five children who are solely American citizens.  (Docket 9 at p. 2).   The court cannot explain the discrepancy between the pretrial report and defendant's filings as to which of his children would need to acquire permanent residence in Guatemala but considers it of little consequence.

The court need not wade into factual disputes regarding defendant's compliance with the letter or spirit of Guatemalan immigration law.[4] It is enough for the court to conclude defendant has strong ties to Guatemala. His wife and some of his children are Guatemalan citizens. He and his other children are seeking permanent residency in Guatemala. Defendant spent the last four years in that nation and apparently intended to make Guatemala his permanent home. The court finds there is a significant risk defendant will fail to appear at proceedings in this case because of his ties to Guatemala. The court must now consider "whether there are conditions of release that will reasonably assure the appearance" of defendant. 18 U.S.C. § 3142(g).

The court finds there are such conditions. Defendant's passport may have been confiscated by law enforcement upon his arrest in Houston and he now offers to surrender his passport card.[5] (Dockets 9 at p. 1 & 19 at p. 4). Without his passport or passport card, defendant cannot legally leave the United States or fly internationally, whether from the United States or between foreign

---

[4]The court likewise need not determine whether defendant moved to Guatemala to escape imminent wire fraud charges or whether defendant or his family filed Freedom of Information Act requests to determine if it was safe for him to return to the United States, as the government argues. (Dockets 17 at p. 28 & 22 at pp. 3-4). These ancillary factual matters have little bearing on the key issues—whether defendant's ties to Guatemala render him a flight risk and whether the court can fashion appropriate release conditions to guarantee his appearance.

[5]Defendant's original pretrial report states his passport was seized in Houston and defense counsel stated at the detention hearing his passport had been taken. (Dockets 9 at p. 1 & 17 at p. 34). However, defendant offers to surrender his passport in his appeal brief, suggesting he or his family now possesses it. (Docket 19 at p. 4).

nations.  There is no evidence defendant has a Guatemalan or other non-American passport he could use to legally fly.  The government suggests defendant could leave the United States—apparently on foot—and fly to Guatemala from Mexico or Canada, even without a passport.  (Docket 17 at p. 30).  The court finds it is unlikely defendant will leave the United States on foot and find an illicit flight to Guatemala.  It is possible defendant could illegally enter Mexico on foot, travel across that country using ground transportation and illegally enter Guatemala.  The court finds it is equally unlikely defendant would undertake such a trek.  Consequently, the court finds ordering defendant to surrender his passport and passport card will ensure defendant appears in court.

Concerns about defendant absconding domestically can also be quelled by travel restrictions.  The court notes the government does not argue defendant is likely to flee South Dakota for another location within the United States.  Defendant's parents and "numerous brothers and sisters" reside in South Dakota.  (Docket 19 at p. 4).  The United States Probation Office Pretrial Services report addendum authored by a local probation officer states defendant could reside with his parents in Hermosa, South Dakota, and work for construction companies owned by his father or brothers.  (Docket 10).  Given these family ties, the court concludes defendant is likely to remain in South Dakota if granted pretrial release.

The government, aside from asserting defendant may attempt to return to Guatemala if granted pretrial release, does not show how passport confiscation

and travel restrictions will not reasonably assure defendant's appearance in court.  The court finds these conditions of release will reasonably assure defendant's appearance.  Finally, neither the government nor the local United States Probation Office is recommending a monetary bond as part of conditions of release at this point.  Given defendant's apparent indigency, see Docket 9 at p. 2 (stating defendant earned approximately $800 a month in Guatemala), and the government's failure to allege defendant has current access to financial resources (such as the approximately $500,000 he allegedly stole), the court will order defendant released on a personal recognizance bond.

**ORDER**

For the reasons given above, it is

ORDERED that defendant's appeal (Docket 19) is granted.

IT IS FURTHER ORDERED that the magistrate judge's orders detaining defendant (Docket 13) and denying defendant's motion for reconsideration of the detention order (Docket 16) are vacated.

IT IS FURTHER ORDERED that the United States Probation Office shall fashion conditions of pretrial release for defendant that include surrender all of his passports and passport cards and travel restricted to the District of South Dakota unless authorized in advance by the United States Probation Office.

IT IS FURTHER ORDERED that the United States Probation Office shall submit proposed conditions of pretrial release consistent with this order to the court for its approval.  The court will then file an order setting conditions of pretrial release.

IT IS FURTHER ORDERED that defendant shall be released on a personal recognizance bond after the court enters its order setting conditions of pretrial release.

IT IS FURTHER ORDERED that the Clerk of Court send a copy of this order to the United States Probation Office.

Dated February 7, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE